**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

NED GAINES, in his capacity as the statutory receiver for SPIRIT COMMERCIAL AUTO RISK RETENTION GROUP, INC.,

Plaintiff,

v.

QBE INSURANCE CORPORATION, a Pennsylvania corporation, et al.,

Defendants.

Case No.: 3:25-cv-02119-RBM-AHG

**ORDER:**

**(1) DENYING DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE [Doc. 17]; AND**

**(2) DENYING DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER AS MOOT [Doc. 21]**

Plaintiff Ned Gaines ("Plaintiff" or "Receiver"), the Insurance Commissioner for the state of Nevada and statutory receiver for Spirit Commercial Auto Risk Retention Group, Inc. ("Spirit"), filed the instant insurance recovery action for declaratory relief and breach of contract against Spirit's program administrators and their insurers. (*See* Doc. 1 ¶¶ 1, 65–76.) In the Complaint, Plaintiff seeks to determine the scope of Spirit's program administrators' insurance coverage to satisfy "a judgment of more than $87 million that was entered" against them in the Eighth Judicial District Court of the State of Nevada, Clark County ("Nevada State Court"). (*Id.* ¶ 1.)

Shortly thereafter, Plaintiff filed two involuntary bankruptcy petitions under Chapter

7 of the Bankruptcy Code against CTC Transportation Insurance Services, LLC ("CTC California") and CTC Transportation Insurance Services of Missouri, LLC ("CTC Missouri") in the U.S. Bankruptcy Court for the Southern District of California ("Bankruptcy Court"). (Doc. 29-1 at 53.) On Plaintiff's Notice (*see* Docs. 5, 13), pursuant to 28 U.S.C. § 157 and this District's General Order No. 312-E, this action was referred to the Bankruptcy Court "without prejudice to any motion to withdraw the reference as to any claim or party or any recommendation of the Bankruptcy Court." (Doc. 16.)

Now pending before the Court are Defendants QBE Insurance Corporation ("QBE"), Capitol Specialty Insurance Corporation ("CapSpecialty"), Argonaut Insurance Company ("Argo"), AXIS Surplus Insurance Company ("AXIS"), and Maxum Indemnity Company's ("Maxum") (collectively, the "Insurer Defendants") Motion to Withdraw Reference ("Motion to Withdraw") (Doc. 17) and Motion to Dismiss or in the Alternative Transfer ("MTD") (Doc. 21.) The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Motion to Withdraw is **DENIED** and the MTD is **DENIED AS MOOT**.

## I. BACKGROUND

### A. Parties

Spirit is a now defunct auto insurance company incorporated in Nevada that "issued commercial auto liability policies to commercial truck owners throughout the [c]ountry." (Doc. 1 ¶¶ 2, 24.) In February 2019, the Nevada State Court placed Spirit "into receivership—and later liquidation—because it was in severe financial distress and could not meet its required minimum statutory reserve obligations nor its obligations to its policyholders and creditors, including paying valid claims that were submitted by its insureds." (*Id.* ¶¶ 2, 27.) The state of Nevada appointed Plaintiff as the Receiver for Spirit, "charged [him] with marshaling and conserving Spirit's assets for purposes of meeting its substantial financial obligations[,] and authorized [him] to file suits to reclaim money and funds that should rightfully be part of the liquidation estate." (*Id.* ¶¶ 2, 11.)

CTC California, CTC Missouri, and CTC Transportation Insurance Services of

Hawaii, LLC ("CTC Hawaii") (collectively, the "CTC Defendants") were Spirit's program administrators and "primarily responsible for its dismal financial condition and ultimate collapse." (*Id.* ¶ 3.) Nominal Defendant CTC Hawaii "is jointly owned and affiliated with CTC California and CTC Missouri and was also named as a defendant by the Receiver in the underlying asset recovery action the Receiver filed in Nevada state court in 2020." (*Id.* ¶ 20.) "CTC California and CTC Missouri . . . are insured under identical errors and omissions malpractice insurance policies" issued by the Insurer Defendants (the "CTC Malpractice Policies"). (*Id.* ¶ 7.) The CTC Malpractice Policies are comprised of a primary policy and four excess policies that "provide $25 million in coverage to both CTC California and CTC Missouri, for combined limits of $50 million." (*Id.* ¶¶ 41, 44; *see id.* ¶¶ 45–52.) The CTC Malpractice Policies "provide broad coverage for" professional negligence claims and contain "contractual language that gives judgment creditors . . . a direct right of action for policy proceeds when . . . there is an unsatisfied judgment that the insureds are unable [to] pay." (*Id.* ¶¶ 7–8.)

As previously noted, the Insurer Defendants issued the CTC Malpractice Policies from which the Receiver seeks to satisfy the Judgment. (*See id.* ¶¶ 7–16, 40.)

**B. Nevada Asset Recovery Action**

On February 6, 2020, the Receiver filed a lawsuit in Nevada State Court against the CTC Defendants, Thomas Mulligan—the owner and CEO of the CTC Defendants—and other affiliated individuals and entities (the "Nevada Asset Recovery Action").[1] (Doc. 1 ¶¶ 3, 30.) The Receiver asserted several causes of action arising from Spirit's alleged mismanagement and requested "more than $30 million in premium funds and other assets allegedly diverted from" Spirit. (Doc. 17-1 at 11.) On July 20, 2020, the Nevada State Court referred the Receiver's causes of action against the CTC Defendants to arbitration and stayed the litigation as to the remaining individuals and entities. (Doc. 1 ¶ 31.)

---

[1] Thomas Mulligan is not a party to this action.

On August 2, 2022, after years of failed appeals, the Receiver filed an Arbitration Complaint against the CTC Defendants based on the CTC Defendants' allegedly wrongful acts in the performance of professional services under the various agreements they had entered into with Spirit (the "Spirit Asset Recovery Arbitration"). (*Id*. ¶¶ 31–32.) On March 11, 2025, a three-person arbitration panel issued an arbitration award finding that CTC California and CTC Missouri were jointly and severally liable to Spirit for $82,909,671.00, which includes $44,022,915.00 in damages and an additional $38,886,756.00 in pre-judgment interest (the "Arbitration Award"). (*Id.* ¶¶ 4, 35.) In doing so, the arbitration panel determined that "CTC California and CTC Missouri had breached multiple contractual, fiduciary, and common law obligations to Spirit," mismanaged Spirit's finances, and had "and failed to comply with the most basic insurance industry customs and practices." (*Id*.) On April 1, 2025, and on the Receiver's motion, the arbitration panel "awarded an additional $2,818,257.39 for the Receiver's attorneys' fees, costs, and expenses, and ordered that the same should be paid within twenty (20) days of the panel's June 6, 2025, order." (*Id.* ¶ 5; *see id.* ¶ 37.)

On June 2, 2025, the Nevada State Court confirmed the Arbitration Award and entered judgement against CTC California and CTC Missouri for $87,689,263 which includes about $5 million in additional interest and provides $20,505 in daily accruing pre-judgment interest (the "Judgment"). (*Id*. ¶¶ 4, 36.) The claims against CTC Hawaii were dismissed and no judgment was entered against it. (*Id*. ¶¶ 20, 35; *see* Doc. 17-1 at 13.)

**C. The New Jersey Action**

In 2020, the CTC Defendants and Thomas Mulligan filed a lawsuit against the Insurer Defendants in the United States District Court, District of New Jersey "seeking defense and indemnity for the Nevada Asset Recovery Action, and the [Insurer Defendants] counterclaimed." (Doc. 17-1 at 12 (citing *CTC Transp. Ins. Serv., LLC v. QBE Ins. Corp.*, Civil Action No. 20-6228 (FLW) (LHG), 2021 WL 2651950 (D.N.J. June 28, 2021)).) The case was voluntarily dismissed without prejudice in November 2022 to allow for the Spirit Asset Recovery Arbitration to proceed. (*Id*. at 13; Doc. 29-1 [Reply] at 255.)

In February 2025, the Insurer Defendants filed a preemptive strike declaratory judgment action in the District of New Jersey concerning their defense and indemnity obligations in the Spirit Asset Recovery Arbitration and the Nevada Asset Recovery Action (the "New Jersey Action"). (Doc. 17-1 at 13; *see* Doc. 29-1 at 50 (citing *QBE Insurance Corp. v. CTC Transp. Ins. Serv., LLC*, Case No. 3:25-cv-01069 (D.N.J.).) The Receiver is not a party in the New Jersey Action. (*See* Doc. 29-1 at 50.) The CTC Defendants and Thomas Mulligan filed counterclaims asserting coverage for defense and indemnity. (Doc. 17-1 at 13.)

**D. The Instant Insurance Coverage Action**

On August 18, 2025, the Receiver filed the Complaint in this Court asserting two causes of action for declaratory relief against all Defendants and breach of contract only as to the Insurer Defendants (the "Insurance Coverage Action"). (Doc. 1 ¶¶ 65–76.) The Receiver claims that CTC California and CTC Missouri are unable to pay the Judgment and therefore seeks "a declaration that [the Insurer Defendants] are obligated to provide coverage for the . . . Judgment and $2.8 million fee award" because CTC California and CTC Missouri are insured under the CTC Malpractice Policies issued by the Insurer Defendants. (*Id.* ¶¶ 6–7, 10.)

On August 19, 2025, the Receiver filed a Chapter 7 involuntary bankruptcy petition against CTC California in Bankruptcy Court. (Doc. 5 at 2.) On August 21, 2025, the Receiver filed a second Chapter 7 involuntary bankruptcy petition against CTC Missouri in Bankruptcy Court. (*Id.*) Plaintiff filed a Notice of Involuntary Bankruptcy and Automatic Stay in this Court on August 28, 2025, seeking to refer this matter to the Bankruptcy Court. (*Id.* at 3; *see also* Doc. 15 at 2–3.) The Court subsequently entered an order referring the matter to the Bankruptcy Court "without prejudice to any motion to withdraw the reference as to any claim or party or any recommendation of the Bankruptcy Court." (Doc. 16.)

On November 4, 2025, the Insurer Defendants filed the instant Motion to Withdraw Reference in this Court. (Doc. 17.) On January 12, 2026, the Insurer Defendants filed the

same Motion to Withdraw Reference in Bankruptcy Court. (Bankr. Doc. 17.)[2] On March 6, 2026, the Receiver filed an Opposition to the Motion to Withdraw Reference ("Opposition") in Bankruptcy Court. (Bankr. Doc. 79.) The Insurer Defendants filed a Reply in Support of the Motion to Withdraw Reference ("Reply") in Bankruptcy Court shortly thereafter. (Bankr. Doc. 91.) On March 26, 2026, the Clerk of the Bankruptcy Court transmitted the Motion to Withdraw and all related briefing to this Court. (Doc. 29.)

## II. LEGAL STANDARD

"[D]istrict courts have original jurisdiction over bankruptcy cases and related proceedings," but may refer "'any or all' bankruptcy cases and related proceedings . . . 'to the bankruptcy judges for the district.'" *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015) (quoting 28 U.S.C. § 1334(a)–(b); 28 U.S.C. § 157(a)). Section 157 "classifies matters as either 'core proceedings,' in which the bankruptcy court 'may enter appropriate orders and judgments,' or 'non-core proceedings,' which the bankruptcy court may hear but for which it may only submit proposed findings of fact and conclusions of law to the district court for de novo review." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (quoting 28 U.S.C. § 157). The bankruptcy court may also "enter appropriate orders and judgments" in non-core proceedings but only "with the consent of all the parties to the proceeding." 28 U.S.C. § 157(c)(1)–(2).

District courts may withdraw "any case or proceeding referred" to the bankruptcy court under 28 U.S.C. § 157(d). This section allows for both mandatory and permissive withdrawal. *Id.* Mandatory withdrawal is required if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* Permissive withdrawal, however, requires

[2] The Court cites to the docket filings in the Adversary Proceeding pending before the Bankruptcy Court unless otherwise noted. *See Barclay v. QBE Ins. Corp.*, Adv. Case No. 26-90008-JBM (Bankr. S.D. Cal.).

a "timely motion of any party" and a showing of "cause." *Id.* "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008. The "burden of persuasion is on the party seeking withdrawal." *In re First All. Mortg. Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001).

"Ultimately, 'it is within a district court's discretion to grant or deny a motion for permissive withdrawal of reference; that decision will not be disturbed unless the court abuses its discretion.'" *In re Cachet Fin. Servs.*, 652 B.R. 341, 346 (C.D. Cal. 2023) (quoting *In re EPD Inv. Co. LLC*, No. ADV 2:12-AP-02424-ER, 2013 WL 5352953, at *2 (C.D. Cal. Sept. 24, 2013)).

## III. <u>DISCUSSION</u>

The Insurer Defendants seek permissive withdrawal of the reference in this action because: (1) this action raises non-core claims; (2) withdrawal promotes judicial economy; (3) withdrawal is necessary to prevent forum shopping; (4) withdrawal will have no impact on the uniform administration of the CTC Defendants' bankruptcy proceedings; and (5) withdrawal will not result in any delay. (*See* Doc. 17-1 at 16–21.) The Court addresses each of these arguments in turn.

### A. Timeliness

"A motion to withdraw [the reference] is timely 'if it was made as promptly as possible in light of the developments in the bankruptcy proceeding.'" *Sec. Farms*, 124 F.3d at 1007 n.3 (quoting *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985)). "Thus, a party must move for withdrawal 'at the first reasonable opportunity' it has, 'as evaluated within the specific factual context of the case.'" *In re GTS 900 F, LLC*, Bankruptcy Case No. 2:09-bk-35127-VZ., U.S. District Court Case No. CV 10-06693 SJO, 2010 WL 4878839, at *2 (C.D. Cal. Nov. 23, 2010) (citation modified) (quoting *Stratton v. Vita Bella Grp. Homes, Inc.*, No. CV F 07–0584 LJO, 2007 WL 1531860, at *2 (E.D. Cal. May 25, 2007)). "Courts have found that motion for withdrawal is timely if filed

within days of the underlying complaint in bankruptcy court." *Westport Ins. Corp. v. Off. Comm. of Unsecured Creditors of Roman Cath. Archbishop of San Francisco*, Case No. 25-cv-09314-WHO, 2025 WL 3545838, at *2 (N.D. Cal. Dec. 10, 2025) (citations omitted).

The Insurer Defendants filed the instant Motion to Withdraw on November 4, 2025—thirteen days after this action was referred to the Bankruptcy Court. (*See* Docs. 16, 17.) The orders for relief in the involuntary bankruptcy proceedings "against CTC California, CTC Missouri, and CTC Hawaii were entered September 12 and 23 and October 30, 2025, respectively." (Doc. 17-1 at 16 n.2.) Accordingly, the Court finds the Motion to Withdraw is timely under § 157(d).

**B. For Cause Shown**

**1. Core vs Non-Core**

"To determine whether cause for permissive withdrawal exists, a district court 'should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn.'" *One Longhorn Land I, L.P. v. Presley*, 529 B.R. 755, 762 (C.D. Cal. April 13, 2015) (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993)). Generally, "claims that arise under or in [the Bankruptcy Code] are deemed to be 'core' proceedings, while claims that are related to [the Bankruptcy Code] are 'noncore' proceedings." *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995). "A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010) (citations omitted). Put differently, "a 'core proceeding' in bankruptcy is one that 'invokes a substantive right provided by [the Bankruptcy Code] or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

Section 157(b)(2) provides a non-exhaustive list of types of core proceedings as well

as two "catch-all" provisions which designate as "core" "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." *See* 28 U.S.C. §§ 157(b)(2)(A), (O). The "section, however, does not enumerate examples of, or define what constitutes, 'non-core' proceedings." *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). To determine "whether a matter is a non-core proceeding," courts generally "look to a variety of factors 'such as whether the rights involved exist independent of [the Bankruptcy Code], depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case.'" *In re Yochum*, 89 F.3d 661, 670 (9th Cir. 1996) (quoting *In re Cinematronics, Inc.*, 916 F.2d 1444, 1450 n.5 (9th Cir. 1990)).

In this case, the Receiver asserts state law claims for declaratory relief and breach of contract. (*See* Doc. 1 ¶¶ 65–76.) Such state law claims do not invoke federal bankruptcy law and do not, by their nature, "arise only in the context of a bankruptcy case." *Gruntz*, 202 F.3d at 1081 (quoting *Wood*, 825 F.2d at 97). Indeed, "there seems to be a consensus that the prepetition breach of a prepetition contract is a non-core matter." *In re Daewoo Motor Am., Inc.*, 302 B.R. 308, 312 (C.D. Cal. 2003); *see In re Castlerock Props.*, 781 F.2d 159, 162 (9th Cir. 1986) (noting state law contract claims "have been held to be 'noncore' 'related proceedings' under § 157(c)") (collecting cases). The crux of this Insurance Coverage Action involves disputes over the terms of insurance contracts—the CTC Malpractice Policies—that the Insurer Defendants and the CTC Defendants executed several years before the Receiver filed involuntary bankruptcy petitions against CTC California and CTC Missouri. (*See* Doc. 1 ¶ 41.) The Receiver's claims based on such prepetition insurance contracts therefore depend on state law determinations of the Parties' contractual rights and liabilities for their resolution and "exist[ ] independently of bankruptcy law." *In re Tamalpais Bancorp*, 451 B.R. 6, 11 (N.D. Cal. 2011); *see In re GACN, Inc.*, 555 B.R. 684, 698 (B.A.P. 9th Cir. 2016) (holding a declaratory relief coverage action against an insurer was non-core because "[t]he underlying dispute solely concerns the parties' rights and liabilities under a prepetition insurance contract, which was

entered into pursuant to state law rather than as a part of a bankruptcy case.").

The Receiver relies on the Ninth Circuit's decision in *In re Thorpe Insulation Co.*, 671 F.3d 1011 (9th Cir. 2012), and contends that "'pre-petition' contracts between an insurer and insured can give rise to 'core' jurisdiction." (Doc. 29-1 at 57, 59.) But the proceeding deemed core in *Thorpe* was a dispute concerning a creditor's proof of claim filed in a bankruptcy case. 671 F.3d at 1022. The Ninth Circuit found the dispute clearly fell under § 157(b)(2)(B) as an "allowance or disallowance of claims against the estate" and determined that the resolution of the creditor's claim "directly impacted the administration of the bankruptcy estate" because it "disputed or affected assets" in a trust formed under 11 U.S.C. § 524(g)." *Id.*[3] Unlike in *Thorpe*, the Receiver claims this action is a "core" proceeding under §§ 157(b)(2)(A),(O)'s "catch-all" provisions, not § 157(b)(2)(B). (*See* Doc. 29-1 at 57.) The Receiver's reliance on *Thorpe* is therefore inapposite.

The Receiver then argues that this Insurance Coverage Action is a core proceeding under §§ 157(b)(2)(A) and 157(b)(2)(O)'s "catch-all" provisions because "a debtor's liability insurance policies are 'property of the estate'" and "a determination of insurance coverage directly affects assets of the estate, the distribution of those assets, and the debtors' creditors." (Doc. 29-1 at 57–58 (citations omitted).) The Ninth Circuit has explained that these "catch-all" provisions should be construed narrowly "to avoid potential constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent." *Dunmore*, 358 F.3d at 1115; *see Castlerock*, 781 F.2d at 162 ("[A] court should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems."). As such, "state law contract

---

[3] Section 524(g) "is unique to the asbestos context [and] provides a mechanism for consolidating asbestos-related assets and liabilities of a debtor into a single trust for the benefit of present and future asbestos claimants." *In re Thorpe*, 671 F.3d at 1015 (citing H.R. Rep. 103–835, at 46–48 (1994)).

claims that only '*arguably* fit within the literal wording of the two catchall provisions' should be considered non-core." *In re Harris*, 590 F.3d 730, 740 (9th Cir. 2009) (quoting *Castlerock*, 781 F.2d at 162) (emphasis in original).

In *Harris*, the Ninth Circuit held that a contract action against a trustee was a core proceeding that "*literally* [fell] within" § 157(b)(2)(A) because the contract claim was based on the trustee's sale of assets under a post-petition settlement agreement that was approved by the bankruptcy court. *Id.* at 740 (emphasis in original). The Ninth Circuit found the post-petition contract claim "necessarily involve[d] how the bankruptcy estate was administered" and distinguished it from prepetition contract actions that "just 'relate[d]' to the administration of the estate because one of the parties to the contract was in bankruptcy." *Id.* (distinguishing *Castlerock*, 781 F.2d at 162; and *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)); *see also Tamalpais Bancorp*, 451 B.R. at 10–11 ("[W]hile a claim arising from a post-petition contract regarding the property of the bankruptcy estate is a core proceeding, a claim arising from a pre-petition contract is a non-core proceeding even if the debtor is a party to the contract at issue.").

Unlike the contract in *Harris*, the CTC Malpractice Policies are prepetition contracts that were not entered into as part of a bankruptcy case or subject to bankruptcy court approval. This action is therefore more akin to the prepetition contract actions at issue in *Castlerock* and *Marathon* which "arose before and independent of the administration of bankruptcy assets." *See Harris*, 590 F.3d at 740 (citing *Castlerock*, 781 F.2d at 162; and *Marathon Pipe Line Co.*, 458 U.S. at 90). While the Receiver's claims may "have a profound impact on the bankruptcy proceedings, a declaratory judgment action regarding ownership of the [CTC Malpractice Policies] involves only a traditional contract dispute that could have been brought even if" the Receiver had never filed involuntary bankruptcy petitions against CTC California and CTC Missouri. *Tamalpais*, 451 B.R. at 11; *see also Ray*, 624 F.3d at 1131. In fact, the Receiver brought this coverage dispute *before* he filed involuntary bankruptcy petitions against CTC California and CTC Missouri. (*See* Doc. 5 at 2.) As such, this is a "traditional" contract action that merely "'relate[s]' to the

administration of the estate" but does not necessarily involve how the bankruptcy estate is administered. *Cf. Harris*, 590 F.3d at 740–41. "Because contract disputes involve quintessentially 'private rights,' bankruptcy courts lack authority under Article III to issue a final judgment on [such] contractual claims." *Westport Ins. Corp.*, 2025 WL 3545838, at *3 (quoting *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014)).

The Court therefore finds the Receiver's claims are non-core. *See GACN, Inc.*, 555 B.R. at 698; *In re Temecula Valley Bancorp*, 523 B.R. 210, 223 (C.D. Cal. 2014) (finding a declaratory relief claim "arising from a pre-petition contract is a non-core proceeding even if the debtor is a party to the contract at issue") (internal citation omitted); *In re We Ins. Servs., Inc.*, Case No.: 20-CV-2076 JLS (MDD), 2021 WL 4150311, at *3 (S.D. Cal. Sept. 13, 2021) (finding an adversary proceeding concerning an insurance coverage dispute was non-core where a trustee sought damages for breach of the insurance policy and a declaration that the policy covers claims against the non-debtor insured). Since "the non-core nature of the claims is not necessarily dispositive," the Court now turns to address the remaining factors to determine whether permissive withdrawal is warranted. *See id.* at *3.

**2. Forum Shopping**

The Receiver and the Insurer Defendants raise forum shopping arguments against each other. The Insurer Defendants argue that the Receiver is forum shopping because his "strategy to file the Coverage Action followed shortly by the two involuntary bankruptcy petitions in Bankruptcy Court, right before dispositive motions were to be briefed in the New Jersey Coverage Action reveals the Receiver's attempt to find what it perceives to be a more favorable forum." (Doc. 17-1 at 20.) The Receiver, on the other hand, argues that the Insurer Defendants are forum shopping by seeking withdrawal because "they would much prefer to litigate in New Jersey without the Receiver and without the oversight of the Bankruptcy Court or the Bankruptcy Trustee." (Doc. 29-1 at 66.)

"'Forum shopping' occurs when a party attempts to manipulate an action to have it heard before a forum it deems more favorable, charitable, or sympathetic toward its point of view." *In re: KSL Media, Inc.*, No. AP 15-01212-GM, 2016 WL 74385, at *9 (C.D.

Cal. Jan. 6, 2016) (quoting *Calvert v. Berg*, No. C13–1019JLR, 2013 WL 3407790, at *5 (W.D. Wash. July 8, 2013)). Courts determine whether a party is forum shopping based on the party's intent. *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009). Forum shopping "is likely present when a party, 'perceiving that it may find itself forced into a disadvantageous forum, seeks to manipulate procedural devices to secure an advantage which, were those devices not available, it could not employ to defeat its opponent's choice of forum.'" *KSL Media, Inc.*, 2016 WL 74385, at *9 (quoting *Calvert*, 2013 WL 3407790, at *5).

As a preliminary matter, the Court finds that the Insurer Defendants seeking to withdraw the reference is not indicative of forum shopping. The Insurer Defendants filed the instant Motion to Withdraw less than two weeks after the action was referred to the Bankruptcy Court (*see supra* Sec.III.A.) and, at the time of the Insurer Defendants' filing, the Bankruptcy Court had not issued any adverse rulings against the Insurer Defendants. *Cf. GTS 900 F, LLC*, 2010 WL 4878839, at *5 ("Forum shopping is likely where a party moves to withdraw the reference after adverse findings have been made against it by the [b]ankruptcy [c]ourt."); *In re Nw. Territorial Mint, LLC*, CASE NO. C16-01895-JCC, 2017 WL 568821, at *4 (W.D. Wash. Feb. 13, 2017) ("Timely motions to withdraw the reference decrease the likelihood of forum shopping.").

The Insurer Defendants contend the Receiver is forum shopping because he "could have brought [his] coverage claim in New Jersey," where the CTC Defendants and the Insurer Defendants had litigated related issues arising from the CTC Malpractice Policies in 2020 and then again in 2025. (Doc. 29-1 [Reply] at 258; *see* Doc. 17-1 at 8.) The Insurer Defendants suggest that "the Receiver's strategy is to avoid an early dispositive motion by the Insurer[ ] [Defendants] on the duty to defend and move the entire dispute to California, which the Receiver has acknowledged." (Doc. 29-1 [Reply] at 255 (citing Bankr. Doc. 21-11).) The Receiver responds that he is not forum shopping by "refusing to litigate in a court that cannot obtain jurisdiction over him and exercising his right to collect on the $87 Million Judgment by forcing debtors with no ability to pay into bankruptcy." (Doc. 29-1

at 65 (citation omitted).)[4] The Receiver claims the District of New Jersey "does not have jurisdiction over [him], who is a citizen of Nevada, and therefore has no ability to provide complete relief." (*Id.* at 61.) Although he is also not a citizen of California (*see* Doc. 1 ¶ 11), the Receiver does not explain why he chose to initiate this action in this District, file the involuntary petitions against CTC California and CTC Missouri in Bankruptcy Court only two days later, and invoke this District's automatic referral rule in such proximity.

Based on the evidence on the record, however, the Court cannot conclude that the Receiver sought "to manipulate procedural devices to secure an advantage." *KSL Media, Inc.*, 2016 WL 74385, at *9 (quoting *Calvert*, 2013 WL 3407790, at *5). While the timing of the Receiver's court filings is questionable, there is no evidence that the District of New Jersey, the Bankruptcy Court, or this Court have issued any substantive rulings against the Receiver or otherwise unfavorable to his position.[5] *Cf. Cachet Fin. Servs.*, 652 B.R. at 350 (finding forum shopping weighed in favor of withdrawal where it appeared "'more than coincidental' that [plaintiff] chose to bring its concededly non-core claims against [defendant] in [b]ankruptcy [c]ourt after [the district court] dismissed a related suit only one month prior).

Moreover, as the Receiver notes, the New Jersey Action "may only address a . . . fraction of the issues at the core of this coverage dispute (*i.e.*, the [Insurer Defendants'] obligation to pay defense costs for Thomas Mulligan)." (Doc. 29-1 [Opp.] at 47.) Indeed, "neither denying nor granting [withdrawal] will facilitate forum shopping here because a district court will ultimately need to address" the Receiver's non-core state claims.

---

[4] The Receiver claims the District of New Jersey "cannot obtain personal jurisdiction over" him, and thus cannot provide complete relief, "because he is a citizen of Nevada." (Doc. 29-1 [Opp.] at 48.) In the District of New Jersey, the Receiver sought to dismiss the New Jersey Action under Rule 12(b)(7) on the ground that he is an "indispensable party" that could not be joined for lack of personal jurisdiction. (*See* Bankr. Doc. 21-11 at 3.)

[5] The Insurer Defendants acknowledge they had not moved for judgment on the pleadings in the New Jersey Action at the time of the Receiver's filings. (*See* Doc. 29-1 [Reply] at 255.)

*Tamalpais*, 451 B.R. at 12 (citation omitted); *see Sec. Farms*, 124 F.3d at 1009 (rejecting argument that withdrawal encourages forum shopping because "[w]ithout regard to withdrawal, the bankruptcy court's order remanding [the] non-core, state law claims inevitably was subject to the approval of the district court."). Accordingly, the Court finds this factor is neutral or weighs slightly in favor of withdrawal.

**3. Remaining Factors**

The other factors— judicial efficiency, "delay and costs to the parties, uniformity of bankruptcy administration, . . . and other related factors"—favor denying withdrawal here. *See Sec. Farms*, 124 F.3d at 1008. "Generally, where the claims at issue are non-core, efficiency favors withdrawing the reference." *We Ins. Servs., Inc.*, 2021 WL 4150311, at *3. "Since a bankruptcy court's determination of non-core matters may be subject to *de novo* review by the district court, in cases where non-core issues predominate, judicial efficiency may be 'enhanced' and 'unnecessary costs could be avoided by a single proceeding in the district court.'" *Cachet Fin. Servs.*, 652 B.R. at 346 (quoting *Sec. Farms*, 124 F.3d at 1008). Still, "[e]ven if the claims against [the defendant] are non-core, judicial efficiency still may be served by denying withdrawal of the reference in light of the circumstances of this case." *Hjelmeset v. Cheng Hung*, Case No. 17–cv–05697–BLF, 2018 WL 558917, at *4 (N.D. Cal. Jan. 25, 2018).

In this case, the Court finds it would be more efficient for all the claims in the Adversary Proceeding to remain together in the Bankruptcy Court. The Insurer Defendants assert that they do not consent to bankruptcy jurisdiction and the Bankruptcy Court can therefore only issue proposed findings of fact and law as to the Receiver's non-core claims, which would then be subject to this Court's *de novo* review. (*See* Doc. 17-1 at 19.) Even so, bankruptcy courts are "permitted to retain jurisdiction over the action for pre-trial matters." *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007).[6]

---

[6] This is true even if a party demands a jury trial. *See Healthcentral.com*, 504 F.3d at 787. According to the Insurer Defendants, the Receiver originally demanded a jury trial (*see*

Several named Defendants have filed motions to dismiss the Chapter 7 Trustee's claims in the Adversary Proceeding and a hearing on such motions has been set for October 29, 2026. (*See* Bankr. Doc. 207.) The Receiver also notes that Thomas Mulligan, the CTC Defendants' CEO, consented to "all coverage disputes . . . proceed[ing] in California in one integrated action." (Doc. 29-1 [Opp.] at 47–48.) "Having the Bankruptcy Court address these pre-trial matters 'promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them.'" *Yoo v. VoIP Guardian LLC*, Case No. 2:25-cv-11607-SSS, Case No. 2:25-cv-11598-SSS, 2026 WL 772606, at *2 (C.D. Cal. Mar. 2, 2026) (quoting *Healthcentral.com*, 504 F.3d at 787–88); *see also In re Solid Landings Behav. Health, Inc.*, No. SACV 20-1167 JGB, 2020 WL 5934304, at *3 (C.D. Cal. July 28, 2020) ("[T]he Bankruptcy Court has the ability to conserve the Court's judicial resources by conducting pre-trial management in the form of discovery, pre-trial conferences, and ruling on other routine motions.") (citing *Healthcentral.com*, 504 F.3d at 787). "Put simply, the Bankruptcy Court's initial determinations are likely to *increase* the chances of efficiently resolving this matter." *Solid Landings Behav. Health, Inc.*, 2020 WL 5934304, at *3 (emphasis in original).

As such, withdrawing the reference at this juncture would also "result in further costs and delay resolving pretrial motions which could narrow the issues or 'obviate the need for trial altogether.'" *In re Cachet Fin. Servs. v. Bancorp Bank*, No. 2:20-BK-10654-VZ, 2023 WL 1785766, at *8 (C.D. Cal. Feb. 6, 2023) (quoting *Hjelmeset*, 2018 WL 558917, at *5); *see also In re Heller Ehrman LLP*, 464 B.R. 348, 360 (N.D. Cal. 2011) ("If this Court ultimately is called upon to make a final judgment in this action, it is not clear that such a procedure will cause unnecessary delay and costs, particularly given the efficiencies of

---

Doc. 1) and withdrew the jury demand in January 2026. (*See* Doc. 17-1 at 19.) As such, the Court need not reach the Insurer Defendants' argument that "bankruptcy courts cannot conduct jury trials over non-core proceedings." (*See id.*)

having the [B]ankruptcy [C]ourt deal with the issues in the first instance.”).

Withdrawal is also likely to impact the uniformity of the bankruptcy administration. “This dispute will decide whether significant assets belong to the bankruptcy estate, and bankruptcy courts in this district have recently (and ably) adjudicated similar cases.” *Temecula Valley Bancorp, Inc.*, 523 B.R. at 224 (declining to permissively withdraw the reference, even where the adversary proceeding for declaratory judgment was non-core, based on the “principles of efficiency and uniformity of bankruptcy administration”). Despite this action involving non-core claims (*see supra* Sec.III.B.1), a potential ruling on the Receiver’s entitlement to the CTC Malpractice Insurance Policies’ proceeds could significantly impact the assets available to creditors. *See We Ins. Servs., Inc.*, 2021 WL 4150311, at *4; *see also Cachet Fin. Servs.*, 2023 WL 1785766, at *8 (finding uniformity factor weighed against withdrawing the reference because the bankruptcy proceeding had not concluded and “the outcome of the parties’ claims may have a significant impact on the administration of the bankruptcy.”).

The Court therefore finds that considerations of judicial efficiency, uniformity of bankruptcy administration, delay, and costs to the parties weigh against withdrawal.

**C. Conclusion**

As all but one of the factors weigh against withdrawing the reference, the Court declines to permissively withdraw the bankruptcy reference.

## IV. CONCLUSION

Based on the foregoing, the Motion to Withdraw (Doc. 17) is **DENIED** and the Motion to Dismiss (Doc. 21) is therefore **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: September 14, 2026

HON. RUTH BERMÚDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE